Good morning, your honors. My name is Earl Lees, in-house counsel for the Skokomish Indian Tribe. I'd like to reserve five minutes for rebuttal. In summary, our claim is based upon the established law of the case of the circuit in the United States Supreme Court that indicated that the Indians that occupied a territory at treaty time had and reserved a right of taking fish in that territory. This law was even extended to hunting in a Washington State Supreme Court case in State v. Buchanan in which the United States Supreme Court denied cert. Your position is that occupancy of territory which borders fishable water equals usual and accustomed taking of fish? We would say yes, your honor. Do you cite any authority for that? Well, we would cite Bolt. Going back to Bolt itself, Judge Bolt said in finding 12 of his decision in 1974 that generally individual Indians had primary use rights in the territory where they resided. So you say the primary use rights equal usual and They would equal usual and accustomed, yes, your honor. What's the authority for that? We would say that we would go back to Judge Craig in finding 354, I'm sorry, in finding 356 that when the court found that the people occupying a territory held the primary right to fish in the territory. Right to fish, in your mind, is actual, usual, and what's the authority for that? Other than those two decisions, your honor, we would simply refer back to article 4 of the treaty where it was the intent of the tribes to reserve such rights in those areas that they usually use. Whether they intended to reserve the rights is one question. Whether they actually used and other question. And so, your honor... Isn't it? Am I wrong about that as a matter of law? I would assume, I think as a matter of law, your honor, there's a presumption built into it. That presumption is not proof necessarily, is it? Presumption can be overcome by proof. And that is why we, when we filed our request for determination, your honor, we asked one to rely on the case law which showed that this was an foundational basis for this. And Judge Bold also said in finding 12 that where the Indians resided, they utilized the entire drainage for opportunity for fishing. Later that they found that the Tawana placed their villages near those areas that would fish. But when we filed our request for determination, we asked the court for the opportunity to be able to present evidence, not only relying on the previous decisions, but also to establish additional, usual, and custom areas under paragraph 25. Utilizing the same basis as numerous other tribes have done, including the Nisqually, the Puyallup, the Upper Skagit, the Quinaults, the Kuliute, and even the Squaxin. We think that we have more than enough to satisfy a factual basis to be allowed to proceed to trial. Judge Bold didn't foreclose the possibility that the tribes could expand or could, there would be additional areas that could be established as a usual and a custom, at least the way I read his opinion. So I can understand why you might want to do that. But what, there's no evidence here that would support that. Well, in this situation, your honor, we would say that this was within our ceded area under our treaty under Article I. It's within the area described by Gibbs that we used and occupied. We used. The court found that we used it. So the question is, what do we use it for? We would argue that we could show that by occupying it, you would, of course, use it for fishing. But we should have been given the opportunity as a matter of law and fact to proceed forward to trial and supplement that with additional expert testimony if necessary. If the court found that we needed to show actual fishing in that area. But what the court did was they summarily closed that opportunity off indefinitely from us. They said there was no ambiguity in the fact that our UNA only included this area and nothing else. Despite what, go ahead, Judge. Why does this come up now? Why didn't it come up when the issue of the fishing rights in the Hood Canal were brought up? So... And that was the way that was settled out. There was a decision based on the evidence at that time, historical and anthropological. So back in 1974, the Skokomish Indian tribe, up until that time, was limited because off-reservation fishing would have resulted in criminal prosecutions of tribal members. So they traveled only a very short distance at night at best from their reservation to fish. They sought the biggest area they could get at that time, which was the commercial fishery in Hood Canal. Over the most recent years, Skokomish has been looking at its history and its development to be able to get access to certain places, like Lake Nawatsel, which is not very far from the reservation, but happens to fall in a watershed just south of us, still located within our ceded area, still located in our territory, at a location we had a village site that was even noted by Elmendorf. Is it in the Hood Canal area? It's south of Hood Canal. So it's not. It's not in Hood Canal. So we had villages south of the Hood Canal watershed. We wanted that opportunity to come to court and present that. The problem that we had was, we went through this elaborate pre-filing process. We had very few of the 21 treaty tribes participating in this process. And we had to go and basically throw the kitchen sink at it, saying that these are all the different ways that we can bring this. And one was saying, let's rely on what Bolt said about occupancy, what Craig said about occupancy. But if that fails, we still would like the opportunity to provide anthropological evidence to support actual fishing within that watershed, which is still within our ceded area and within our territory. Now as for hunting, we can hunt there because the court utilized an analysis based on the fishing case saying that, of course, you would have used, in State v. Buchanan, the Washington State Supreme Court found that it would have, of course, included those areas ceded to the United States. So it's about use. But we wanted that opportunity. Now the court... But let me ask you this. Did you cross move for summary judgment? Yes. As well. Did you present this evidence of fishing to the district court? We relied on the record that we occupied and used it. But in our reply, we also asked the court, in the event that the court was not convinced by our position, that we'd be allowed to proceed forward to supplement with additional anthropological evidence to support it with factual basis. The problem with the paragraph 25 process is, when we file the RFD, you're not allowed to file an argument. And so we didn't attach expert reports and all other documents. And when we got hit with the motions to dismiss, we responded with a cross motion for summary judgment, thinking that the court would necessarily find that's a question of material fact. Let me put it to you this way. In your opposition to their motion for summary judgment, did you come up with this additional evidence of fishing? We did not present additional evidence of fishing at that time. And in your own, you didn't, in your affirmative motion for summary judgment, you didn't present any additional evidence? No, we relied on the record that had material submitted, Your Honor. Okay. And then relying on the record, you rely on Judge Bolt's finding or conclusion regarding Skokomish's usual and accustomed areas. We relied on... And on Judge Craig's later finding. Right. And the nine volumes of the expert reports from the trial, we had, for example, the expert Elmendorf laying out Skokomish's use of its territories, its fishing practices. All of that is part of the existing record, which we intended to rely upon, which we felt that was more than enough factual base to support those underlying findings. But that the court simply rejected that argument and did a truncated analysis from what we can say, and simply said that the Judge Bolt only intended to include Hood Canal and nothing else, and said there was no ambiguity. By doing so, he foreclosed the possibility of us filing at a later date with a new expert report showing there's villages and we used it. But wasn't that all your client asked for at that time? The Hood Canal area? The Hood Canal... That's all we asked for in 1974 was the Hood Canal. But in drafting the Judge Bolt's decision, he allowed the tribes to come back and establish additional use in one of the custom areas. The Judge Bolt's intent was that because it was a truncated process with Barbara Lane working in the case, that there wasn't enough time to consider every tribe's complete UNA. What Judge Bolt said in finding the initial findings, the summary of the findings of fact and each of the plaintiff tribes, and Skokomas is one of the plaintiff tribes, the findings set forth information regarding some, but by no means all, of their usual places, a custom place, fishing places. And so for us, they reserved that paragraph 25 process to confirm what we had and also to add additional areas. If the court finds that we haven't satisfied it with the existing record or rejects our argument of occupancy alone, which then we should have been able to supplement it with additional evidence. So explain to me the relevance of Judge Craig's decision in, what is it, 84? It was in 84, yes, Your Honor. So Judge Craig... But you rely on his decision as well. Yes. We rely on Judge Craig because he went and took, in bringing the case, the case to the Supreme Court. We had a contentious battle with multiple tribes, including the Jamestown, Port Gamble, Sklallam, and Lower Elwha-Klallam, as well as the Suquamish. We reached a hook canal agreement with the Sklallam and Klallam, but we had to go to trial. At that trial with the Suquamish, we were forced to present evidence regarding the geographic scope of our entire territory that we occupied in 1854, which was described by George Gibbs. The court adopted that as the best evidence of our territory, found that we long used and occupied it, and that the people that occupied a territory had the primary right of taking fish there. And he had based that on extensive anthropological evidence. And so we felt that that was an expansion or a break from the past practices in Bolt, or supplementing those past practices, to be more accurate, that would allow us to go forward. But we never asked not to have the opportunity to present supplemental evidence. The problem with when we, if we brought the cross motion for summary judgment, if we had, we have, we are. I thought the whole key to the 1884 case was all about your primary, establishing a primary right in the hood canal. It was about establishing a primary right in the hood canal. But unfortunately, it went way out into the outfield. I mean, it was way out there because of the way that it went to trial over multiple dates. The court forced an analysis of the entire anthropological record regarding Suquamish's use of areas. Now, that gave Did he make any findings of usual and accustomed fishing areas? He did, he made The heart of his decision was you had a primary right in the hood canal. Basin He made a decision that the hood canal was a part of this bigger territory that we had, the northern portion. And that you had a primary right in the hood canal. To take fish, yes, your honor, to take fish within that area. And isn't that a substantial geographic area? That is a substantial geographic area, which goes from about Foulweather Bluff to down to just south of the Suquamish reservation. But he, by laying out these additional facts, he established another area that we long used and occupied. And then he made that one unique finding, which was built on Bolt's finding from finding 12, that said, if you live there, you fish there. And so we went to court and said He said, if you live there, you have the primary rights to fish there. But he also said to the extent that the Clallam and Suquamish people fished in Tawana territory, the court finds that they did so by virtue of secondary rights or as invited guests. So the ones who fished were the secondary rights. It doesn't say that your people fished. Bolt decided in the initial case in 1974 that our usual and customary I'm talking about 1984. 1984, the court found that we had a primary right, the first right. And he found that in his conclusion, 92, that the primary right is derived from the right of taking fish. Does primary right equal usual and a custom? We would say it would, because you can't have one without the other. If you don't have a right of taking fish, then you can't have a primary right of taking fish. But he made a specific finding that the Clallam and Suquamish people fished in Tawana territory. The court finds that they did so by virtue of secondary rights or as invited guests. So he did make a finding as to who fished. Not who had the right to fish, but who actually fished. And it wasn't your folks. It was the others. He did make a finding that they fished there by invitation to us. But we would say again that he went beyond that by laying out the geographic boundaries of the totality of the territory and that people that occupied it had the primary right of taking fish there. Our request for determination asks for both the right of taking fish and the primary right of regulation. Okay. You're just about, well, you're over your time by 10 seconds. But I'll give you a minute to respond to anything. Thank you. Thank you.  Counsel. May it please the Court. I'd like to take seven and a half minutes for my argument and leave the remainder to Ms. Rasmussen. Suquamish seeks to overturn a well-reasoned district court opinion that prohibited it from misusing prior U.S. v. Washington decisions to exclude the Squaxin from UNA recognized to it by Judge Bolt more than 40 years ago. The district court, however, properly dismissed both Suquamish's 25A1 and A6 claims. And in addition, Suquamish is judicially stopped from expanding its UNA given its previous arguments to the Court that its UNA was confined exclusively to Hood Canal. Counsel misunderstands several things about A1 and, or misstates several things about A1 and the 811 determination, the primary rights determination by Judge Craig in 1984. The first of those is that occupancy equals automatically UNA. And that's not the standard. The standard from Judge Bolt, reiterated by the district court below, is that to establish UNA, you must provide evidence of phishing. The Gibbs quote. As I understood your learned friend, he said he was attempting to present that type of evidence, but Judge Martinez wouldn't allow it. Your Honor, if you're speaking to A6, Judge Bolt did include A6 in the district court rules for invoking the continuing jurisdiction of the U.S. v. Washington injunction. And it was not an opportunity endlessly just to come back. It was to come back for UNA that had not been specifically determined. And what the district court did here, consistent with Ninth Circuit precedent from Muckleshoot v. Lummi, was indicate that the Suquamish's original determination of their UNA, all the waters flowing into the Hood Canal and the canal itself, was in fact a specific determination of their UNA. And the district court decision in that regard is litigation management. And as such, it is reviewed only for an abuse of discretion. Let me just ask you this. Didn't Judge Bolt contemplate that the original proceeding, that it may not have included all of the usual and accustomed areas of phishing, that he identified in that case? That's correct. He left open the possibility that there might need to be other proceedings to identify other areas. And, in fact, we know that, in fact, there have been such proceedings. That's correct. That resulted in an additional UNA for tribes that had UNA identified in the original vote. That's correct, Your Honor. Judge Bolt left open the opportunity to return for grounds that had not been specifically determined. But the cases that allowed A6 to proceed that Suquamish relied upon in their briefing are all 30 to 35 years old. And all of them precede this Court's precedent in Muckleshoot v. Lummi. In that case, the Court had to decide whether A1 or A6 was available to make an evidentiary ruling. And they concluded that A6 could not be available because Lummi's UNA had been specifically determined. And the reference that the Court made in that regard was that Judge Bolt's original determination of Lummi's UNA was a specific determination. And that's exactly what the District Court has done here. It is also the case that if you accept Suquamish's reading of A6, that every tribe can come back an unlimited number of times over an indefinite period, we're 45 years in at this point, to ask for any river, bay, whatever, that they didn't specifically ask for the first time. And what Judge Martinez is saying, consistent with Ninth Circuit precedent, is that an original determination can be a specific determination. And it is here. And this is the District Court managing the litigation, so they should be reviewed for abuse of discretion only. You mentioned a Ninth Circuit determination. Give me that case again. Yes, Your Honor. That's Muckleshoot v. Lummi, 141 F. 3rd, 1355. And that discussion is particularly at 1359 to 1360. I would note also, Your Honor, that more recently in a case that was decided after our briefing, Judge Bolt also, excuse me, Your Honor, Judge Martinez, made the same ruling regarding Muckleshoot's UNA and their A6 claim that's now pending on appeal here and used the exact same reasoning that I'm giving here, which is that Muckleshoot v. Lummi indicates that an original determination can be a specific determination. So, Your Honors, to proceed under A1, there has to be a case that gives you a basis for relief. There are only two cases that Skokomish could rely on. Nothing in Judge Bolt's original determination supports fishing outside the Hood Canal, and nothing in 81-1, the 1984 Craig ruling, does either. That was a primary rights determination. It considered only whether Skokomish, as between it and other tribes that also had previously determined shared UNA within the Hood Canal, who gets to go first, who has the primary right. If you look at that case, a conclusion of Law 91, the Court goes through exactly what it's doing. The first conclusion is Skokomish has UNA in the Hood Canal. Second conclusion is the Suquamish and the Sklallams have UNA in the Hood Canal. The third conclusion is we haven't decided before if there's a primary right, and if so, who gets it. And then conclusion 92 says, yeah, in fact, it is Skokomish who gets that primary right. And they cite defining a fact 354, not the Gibbs quote, which is just part of the corroborating evidence. They cite the 354, which is the treaty time territory of the Tawana, the Skokomish Indians, encompass all the waters of the Hood Canal, the rivers and streams draining into it, and the Hood Canal drainage basin. So that's why A1 doesn't work. I've explained why A6 doesn't work, Your Honors. And then the final point is that Skokomish is judicially stopped from arguing that it holds any UNA beyond the Hood Canal basin because it argued successfully both the unique and clearly definable nature of its UNA and also stated that the Skokomish are confined exclusively to Hood Canal. Those arguments were made in 81-1. And it made this strategic choice in convincing the Court that it could exclude Suquamish from the UNA recognized to it by Judge Bolt in Decision 1. The Skokomish thereby gained a large primary rights in a large and productive marine fishery from which it has, in fact, excluded Suquamish for the many years since that decision. And now Skokomish is seeking both to retain the rights that it gained through arguing a limitation of its UNA and to expand its primary right by arguing the exact opposite. They've named Squaxin as a defendant and are seeking to expand into Squaxin UNA in inlets in southern Puget Sound that were recognized unambiguously to be Squaxin UNA by Judge Bolt 40 years ago. And they're seeking not only to expand into Squaxin UNA but through its primary right to exclude Squaxin from it. And this is exactly the type of duplicity that is prohibited under judicial estoppel by New Hampshire v. Maine. It provides an additional basis for the dismissal of both A1 and A6. And for all of those reasons, Your Honor, Squaxin seeks affirmance of the district court dismissal with prejudice below. And I leave the rest of my time to Mr. Rasmussen, unless you have any further questions. Go ahead. May it please the Court, my name is Lauren Rasmussen for the Port Campbell and Jamestown S'Klallam Tribes. I'm here today to just affirm what my colleague has said. There's one very important piece of this that has been completely confused by Skokoma's tribe. In 1980s, they got a motion to dismiss on the grounds of raised judicata when they brought this primary right case. And then the argument was primary rights is not the same as UNA, Your Honor, so I can't be foreclosed by raised judicata. This is not a second claim for UNA. But what's important about that decision that was issued by Magistrate Cooper and is found out ER 159, is the court would have dismissed the claim at the time if it had been a second UNA claim. So what that means is paragraph 25A6 was created at the beginning of the case to allow tribes to get their house in order. And there was a decade of tribes getting their house in order and there were provisional findings. And there were statements by Judge Bolt that says you could come back and you can modify this. But this practice has not happened until 1985 was the last time Judge Bolt put a statement in somebody's UNA that says this doesn't mean you can't come back. And then you fast-forward to 1998 and you have this court saying Lummi's UNA is specifically determined and it was specifically determined in finding a house in order. And it was specifically determined in the original Bolt decision. Because of that, they cannot submit new evidence. And Judge Martinez was merely managing the case and applying the law of the circuit, which he's required to do. And since that time, no tribe has brought forth an A6 claim successfully except for Quinault and Quileute. And that case was an extraordinary circumstance because the parties in question stipulated that the UNA was not sufficient. It was not specifically determined. Quinault and Quileute had a UNA along the coastline and they wanted to expand out into the open ocean and the parties agreed and the courts... That case sounds familiar. Yeah, it does sound familiar, doesn't it? And it's coming back. But the court agreed and the parties agreed. And so Judge Martinez is managing his case and a case that's 40 years old has to be managed, Your Honor. He can't just do what Skokomish is saying and allow Skokomish to come in. Now you hear that Muckleshoot is right behind them with an expansion of their UNA request. And in both circumstances, the parties are using the exact same evidence. They're recirculating the exact same evidence they had available to them. So we look at the Cooper decision who said, look, we don't have to look at whether the early litigation would be foreclosed because they're two different causes of action. This contradicts Skokomish's argument that they're the same thing, that the UNA is within the primary right. And so it's like getting a mega, you know, thing that both of them are included. This is absolutely incorrect. And it was the only reason they prevailed before. And we have the Ninth Circuit in Skokomish v. U.S. actually adopting this. They're not relitigating the same cause of action. So the Skokomish v. U.S. case in the Ninth Circuit affirms that point. But I want to go back to some of the things that Skokomish has said, because I think that in some sense, I don't know by design or default, they're misstating what the facts are in the law. Occupancy of territory is not UNA. The Sklallam have the same ceded territory as the Skokomish tribe. But as you note in the Hood Canal Agreement, we don't have UNA in the Skokomish River. The Skokomish River would have been within our ceded territory. In addition, our UNA extends outside of our ceded territory up into the San Juans. So these are not the same things. These are apples and oranges, Your Honor. And one of the important pieces that has come up over the last couple of years is Skokomish tribe has three times in the last couple of years argued that the primary right meant more than what the courts have said it meant. This is the third time that they've exaggerated what it means. The first two were the Goldmark decision where they argued the primary right to fish included the primary right to exclude the Sklallam from their hunting territory. And the second time was the Forsman case that was just argued. And, Your Honor, I apologize, it's now been affirmed by this Court, and that's cause number 17-35336, has said something that should resonate with the Court here, that no plausible reading supported the Skokomish tribe's arguments. And that's similar to this, too. No plausible reading makes the two causes of action include each other. No plausible reading supports the assertion that finding a fact 353 was an order of this Court on primary rights. And Your Honor's only need to turn to... I haven't heard either you or your co-counsel, Mr. Babcock, discuss the jurisdictional issues about the pre-filing. So, Your Honor, it's our position that the pre-filing question is irrelevant because Judge Martinez considered this case as if it had been filed correctly and as if all the procedures had been correctly followed. So we can ignore all that? So from our perspective, it doesn't matter because he gave them the benefit of the doubt in order to not create an issue on appeal. I gather if we were to rely on that jurisdictional issue, it would just go back and they would start all over again. But I wanted to turn back to something that really bothers me, because three times in the decision, the Court says, please look at Exhibit A for the geographic description of Skokomish's tribe's primary right. Well, we can look at Exhibit A, and it's found at ER 256, and the Satsop watershed is nowhere on this map. So when Skokomish says an adjudication about Hood Canal doesn't mean Hood Canal and not the Satsop, I would say that that's incorrect. When you have a map that says this is your territory, and it doesn't contain the area you say is contained in the decision, and the Court quotes that statement three times in its decision, at 626 F Sup, at 1489, at 1490, and 1491. Exhibit A, Exhibit A, as depicted in Exhibit A, and Skokomish stands up here and says, Your Honor, finding Effect 353 means we have UNA and primary rights in the Satsop. I would say that that goes to the credibility, and actually the last three cases go to the incredibility of the Skokomish tribe to argue things that are there that are not there, and to try to foreclose other parties. But then I also want to turn this Court's attention to another case that's coming down the line, which kind of makes a difference in this question of whether there's a revolving door, is we have two cases where the Court has said, if Paragraph 25A64 closes this, you have a specifically determined UNA. And we have another one that's filed at the District Court, which is the Stiligwamish case. In there, the Court specifically said, Because you don't have a lawyer, we're going to let you come back. And that's the kind of distinct circumstance which reminds this Court of things like Ackerman and Clapprott, the idea of you didn't have an attorney, you didn't have any money, we're going to let you come back, and we're going to let you expand later. But Skokomish has no such statement. The litigation of the past decade makes it clear that Skokomish very much has a lawyer and the money to pay for their defense and their affirmative claims, and is not at all the kind of circumstance which the Court was leaving these preliminary findings for. And Skokomish has no such preliminary finding. The Court did not abuse its discretion. And similar into the case of New Hampshire v. Maine, when Justice Ginsburg said something that I think should resonate with the Court. She said to New Hampshire, you know, sort of tsk, tsk, historical materials that were no less, that New Hampshire is relying on historical materials that were no less available in the 1970s than they were today, and they had every incentive to consult those materials. And that goes to judicial estoppel, but it also goes to equity, because Skokomish had every incentive to use that finding of Fact 353, that information from Gibbs, and argue for the SATSOP drainage at the time they filed, but it didn't fit with their theory of the case. So they didn't. And so now to come back and say, now that I've pulled the wool over your eyes, Clallam, and I've gotten you to sign the Hood Canal Agreement based on the fact that we're, that we argued we are confined exclusively to Hood Canal, I'm going to come back and I'm going to blow that wide open, and I'm going to ask for something more. And the Court adopted the Hood Canal Agreement as an order of the Court. And in that agreement it says that Skokomish is confined conclusively to Hood Canal, we're dependent on it. And this is that kind of hiding of the ball, the fast and loose that the Court system doesn't like. You referred to the map. I found those maps difficult to follow, to be honest with you. But as I understand from his argument, or from the argument here, is that the territory that was identified for the Skokomish, it encompassed just a bit of the Satsop Basin. Is that correct or not? So what's correct is that the Treaty of Point-No-Point includes the language that the overall ceded territory of the four tribes, the Sklallam and the Skokomish, includes areas within the Satsop. But it says these tribes jointly cede. So it is not an exclusive territory. It does not say that it is an area where they can all fish. In fact, the Skokomish can't fish in much of the ceded territory on the coast of the Strait of Juan de Fuca because it's not a historical fishing location for that tribe. And so this is that conflating, just because it's part of our ceded territory, our ceded territory that we gave up jointly under the treaty, does not make it a historical place that we went and fished. And in fact, the Skokomish River is a perfect example for the Sklallam. The Strait of Juan de Fuca and the shores of the Strait of Juan de Fuca are within Skokomish's ceded territory, but they're not allowed to fish there. But we can fish far beyond our ceded territory. So it's apples and oranges, and they're very succinct and defined things that you have to prove. And the big point is, when I go back to Cooper and I go back to the court, is that had Skokomish argued back in the 80s that the primary right included this expanded UNA, they would have lost based on res judicata then. And so either they should have lost then or they should lose now because their UNA is specifically determined and not subject to reopening. Otherwise, cases like the Samish are ridiculous because they filed a 60B motion to reopen the case. Why does the Samish have to show extraordinary circumstances to come back in? Skokomish can just, you know, come in every day. They actually say any future claim should be included, which is not appropriate. Thank you, Your Honor. Thank you. Thank you very much. All right. Counsel, you can have a minute for rebuttal. Thank you, Your Honors. I'm going to limit myself exclusively to Paragraph 25A6, establishing additional UNA. We think it's extremely hypocritical of the Squawkson, who relied upon Paragraph 25A6 itself to vastly expand its UNA. With the other tribes as well, with Puyallup and Nisqually, their UNA language, as Bolt wrote it, mirrors ours. It talks about, for us, our fishery included all the waterways. With Nisqually included, with Puyallup included, they got more. They had the opportunity to go forward under 25A6. Now, for us, the S'Klallam would argue that we're precluded by the Hood Canal Agreement. It doesn't say that. It says we were entirely dependent on Hood Canal at the time because that's true. That was the only UNA established in 1984. If Judge Craig wanted to remove or exclude UNA, he would have done exactly what he did to the S'Klallam and Klallam. He said, we're taking it out of your UNA determination. We accepted the Skokomish River. He could have said, the Skokomish's UNA will be this and only this. And what's also contradictory, as they say, the primary right case was only about the primary right. But then they go and say it's about your UNA. So it's one or the other. So if it's about the primary right alone, then we should be able to go under Paragraph 25A6. And this language in Paragraph 25 was kept by Judge Rothstein in the 90s. It wasn't like we just pulled something out of a 74 decision. It was preserved. And until that order is amended or modified, why shouldn't we have our day in court? If we lose after presenting anthropological evidence, then we lose. But we should at least have that one step. Okay. All right. Thank you, Counsel. We appreciate your argument. Thank you. The matter is submitted at this time.
judges: Paez, Bea, Royal